KANSAS CITY, FT. S. & M. R. Co. *v.* McDONALD.

*(Circuit Court of Appeals, Eighth Circuit.   June 13, 1892.)*

1. RAILROAD COMPANIES—COLLISION ON CROSSING TRACKS—DUTY TO STOP.
   In an action for personal injuries resulting from a collision of trains at a crossing of two railroads, it cannot be said as a matter of law that the failure of plaintiff's train to stop absolutely at the stopping post contributed to the injury, when it appears that at most it moved slowly past the post, and that the engineer looked to the stopping post on the other road, and no train was then in sight.

2. SAME—LOOKING AND LISTENING.
   While it is the duty of an engineer on a passenger train approaching a crossing of another railroad to use due care to ascertain whether a train is approaching thereon, it cannot be said as a matter of law that he is bound to listen, in addition to looking, although the view is limited by obstructions.

**3.** CONDUCT OF TRIAL—RECEIVING OTHER VERDICT IN PRESENCE OF JURY.

In an action against a railroad company for injuries received in a collision, it was not error to receive and have read in open court, and in the presence of the jury, a verdict against defendant in another action for injuries occasioned by the same collision.

**4.** TRIAL—REBUTTAL—DISCRETION OF COURT.

Allowing testimony by witnesses in rebuttal to be given in support of the evidence in chief is within the discretion of the trial court.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Action by Harry McDonald against the Kansas City, Ft. Scott & Memphis Railroad Company to recover damages for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

*C. H. Trimble, I. P. Dana,* and *Frank Hagerman, (Adams & Trimble* and *Wallace Pratt,* on the brief,) for plaintiff in error.

*George H. Sanders* and *Mr. Watkins,* for defendant in error.

Before BREWER, Circuit Justice, SANBORN, Circuit Judge, and SHIRAS, District Judge.

SHIRAS, District Judge.   On the 9th day of July, 1890, a collision occurred between a passenger train running on the Little Rock & Memphis Railway and a freight train on the Kansas City, Ft. Scott & Memphis Railroad, at a point where the lines of these companies cross each other, near Hopefield, in Crittenden county, Ark.   The defendant in error was the conductor in charge of the passenger train, and for the injuries caused him by the collision he brought suit in the United States circuit court for the eastern district of Arkansas against the Kansas City Company, claiming that the collision was due to negligence on part of the persons in charge of the freight train.   The answer filed in the cause denied all charges of negligence against the defendant company, and averred that the collision was due to the negligence of those in control of the passenger train on which the plaintiff was the conductor.   Upon the trial before the court and jury the plaintiff recovered a verdict, upon which judgment was entered, to reverse which the railroad company has brought the case to this court upon a writ of error.

The evidence on behalf of the plaintiff below was to the effect that when the passenger train on the Little Rock road reached the stopping post, which was located about 200 feet from the crossing, it came to a dead halt; that the engineer looked over to the stopping post on the Kansas City line; that no train was then in sight upon that road; that thereupon the engineer gave two blasts of the whistle, and started his train forward to make the crossing; that from the time he started his train in motion, the engineer did not look up the line of the Kansas City road until his engine was going on the crossing.   The testimony of the only witness introduced on behalf of the defendant company was to the effect that the passenger train, of which the plaintiff was conductor, did not come to a dead halt at the stopping post, but slowed down its speed so that it was not running at a rate to exceed one half or three quarters of a mile an hour.

Under the evidence there can be no doubt that when the Little Rock train started forward from its stopping post the train on the Kansas City

road had not reached its stopping post, and therefore, according to the admitted rule in such cases, the Little Rock train had the right of way, and no fact is made to appear which should have caused the engineer to forbear starting for the crossing.

The witnesses for both parties agree in the statement that as the trains approached the crossing, and at the time of the collision, the freight train was moving more rapidly than the passenger train; and, as the engine and several of the coaches of the passenger train had passed the crossing before the engine of the freight train struck the passenger train, it is demonstrated that the latter not only reached the crossing first, but also that the engine of the passenger train must have reached the point of intersection before the freight engine reached its stopping post, where it should have been halted for the purpose of seeing whether the crossing was unobstructed.

The court charged the jury that the plaintiff could not recover unless the collision was caused by negligence in the management of the freight train on the defendant road; and, further, that it was the duty of the engineer of the Little Rock train to exercise due care in going over the crossing to see that his train did not come into collision with a train on the track of the other road; and that if, by the exercise of due care, he could have avoided the collision, then the plaintiff could not recover, no matter how great the negligence of the defendant might have been.

The following instruction was asked on behalf of the defendant:

"It was the duty of the engineer on the train of the Little Rock & Memphis Railroad to stop, look, and listen, before going over the crossing, for trains that might be on the other road. If he failed to do so, and thereby contributed to produce the collision, plaintiff cannot recover."

The court refused to give the instruction, on the ground that, unless it was qualified, it ought not to be given; and this ruling presents the question mainly relied on by counsel for the railway company in their argument for a new trial. In determining whether there is or not error in giving or refusing particular instructions, regard must be had to the disputed questions of fact arising in the case in hand. A request may be put in such form that, as an abstract proposition of law, it may be well enough, yet, as applied to the facts of a given case, it may be misleading. If the request preferred by the defendant company had been given as asked, the jury would have understood therefrom that it was the duty of the engineer to stop his train. Now, there was some conflict in the evidence as to whether the passenger train came to an absolute halt at the stopping post, or whether it moved slowly by the same. If the speed of the train was so completely checked that the purpose of stopping was fulfilled, the mere fact that the movement of the train was not absolutely halted, under the circumstances of this collision, would not necessarily constitute contributory negligence on the part of the engineer. If the speed of the train was checked to such a degree that when it came to the stopping post the engineer had it under complete control, so that he could properly observe the surroundings and take notice of a train coming upon the intersecting line of railway, as readily as though his engine was

brought to an absolute standstill, then it could not be said, as a matter of law, that the failure of the engineer to stop his train, in the absolute sense of that term, was an act of negligence contributing to the collision. Without any qualification of the request preferred, the jury would have probably inferred therefrom that nothing short of a stop absolute would fulfill the duty imposed upon the engineer, and that a failure in that respect would require a finding of negligence on his part sufficient to defeat plaintiff's right of recovery.

Furthermore, the request declared it to be the duty of the engineer to look and listen, or, in other words, it declares that it was the duty of the engineer not only to look, but also to listen, for an approaching train. The engineer testified that when his train halted at the stopping post, he looked over on the other line of the railway, and that no train was in sight thereon. All the evidence in the case supports this statement of the engineer. It may be stated that the point of intersection of these lines of railway is in a heavily wooded country, so that the line of vision is greatly circumscribed. As already said, when the passenger train, having passed its stopping post, started for the crossing, the freight train had not appeared in sight, nor had it reached the stopping post on its line. The theory of the request made on behalf of the defendant is that, under these circumstances, the law made it the duty of the engineer not only to look, but also to listen, for an approaching train. It was his duty to use due care to find out whether there was a train approaching on the other road, in such proximity to the crossing that he could not safely attempt to pass over it; but the law does not lay down the specific means he must employ in ascertaining whether the crossing could be safely attempted. Our common knowledge tells us that the eye is the organ mainly relied upon in such cases, and, if the engineer exercised a careful lookout, it cannot be said, as a matter of law, that he must, in addition thereto, listen for the approach of a train. If the request had left it to the jury to determine, as a question of fact, whether the surroundings were such that, in the exercise of ordinary care, the engineer should have listened as well as looked for an approaching train, then the proposition would not be objectionable, but as it was framed it asked the court to declare, as a matter of law, that if the engineer did not listen as well as look, then he was guilty of negligence. We think the refusal of the trial court to give the request in the form it was presented was not only proper, but that it would have been error to have given it without changing and qualifying it, and this the court was not required to do.

It is also assigned as error that during the trial of this cause, and in the presence of the jury in the box, the court received a verdict rendered in the case of *Eugenia Stoner* vs. *The Defendant Company and the Little Rock & Memphis Railway Company,* which was a suit by a passenger to recover damages for injuries received in the same collision, and in which the jury found against the defendant herein, but in favor of the Little Rock Company. It cannot be assumed that the jury engaged in the trial of the case at bar would understand that the verdict read in their hearing

formed any part of the evidence submitted to their consideration. As men of ordinary intelligence, they must have known that the reception and reading of the verdict rendered in the other case was not part of the trial in which they were sitting as jurors, but was a matter wholly aside therefrom. The fact that they obtained knowledge of the verdict in the *Stoner Case* by hearing it read in open court cannot be assumed to have affected their judgment in any degree other or different from what would have been the effect, if they had obtained knowledge of it by reading the newspapers, or by hearing the record of the court proceedings read in the usual open and public manner; and certainly it would not be claimed that, because the jury learned in either of these ways of the rendition of the verdict in the *Stoner Case*, they were disqualified from sitting as a jury in the case at bar.

Several assignments of error are based upon the action of the trial court in permitting witnesses to be called in rebuttal whose testimony was in support of that given in chief, but this was a matter so clearly within the discretion of the trial court that counsel did not press the point in oral argument, and we need only say that no error appears therein.

The case was fairly sent to the jury on the question of negligence on part of the defendant company, and of contributory negligence in the running of the train of which the plaintiff was conductor, and nothing is shown impeaching the correctness of the verdict under the evidence, whence it follows that of right the judgment rendered should be affirmed, at the cost of plaintiff in error, and it is so ordered. Affirmed.